```
1  LEO D. PLOTKIN (SBN 101893)
   JOHN P. MERTENS (SBN 252762)
2  LEVY, SMALL & LALLAS
   A Partnership Including Professional Corporations
3  815 Moraga Drive
4  Los Angeles, California 90049
   Telephone: (310) 471-3000
5  Facsimile:  (310) 471-7990
   Email:  lplotkin@lsl-la.com
6          jmertens@lsl-la.com
7  Attorneys for Plaintiff
   PNCEF, LLC, dba PNC Equipment Finance
```

FILED 2010 OCT 20 PM 3:01

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| PNCEF, LLC, dba PNC EQUIPMENT FINANCE, an Indiana limited liability company,<br><br>  Plaintiff,<br><br>vs.<br><br>BPMB, INC., a California corporation, and MICHAEL MAI, an individual,<br><br>  Defendants. | Case No. SACV10-1606 DOC(PJWx)<br><br>COMPLAINT FOR:<br>1) FRAUD;<br>2) IMPOSITION OF CONSTRUCTIVE TRUST;<br>3) NEGLIGENT MISREPRESENTATION;<br>4) CONVERSION; AND<br>5) BREACH OF CONTRACT<br><br>JURY TRIAL DEMANDED |

Plaintiff alleges:

## GENERAL ALLEGATIONS

**A.   Jurisdiction and Venue**

1.   Jurisdiction of this action is based upon 28 U.S.C. Section 1332(a) as there is complete diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

2. Venue is appropriate in this district pursuant to 28 U.S.C. Section 1391(a) in that all defendants reside in this district, and a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

### B. The Parties

3. Plaintiff PNCEF, LLC, dba PNC Equipment Finance is now, and at all times material hereto has been, a limited liability company organized and existing under and by virtue of the laws of the State of Indiana, with its principal place of business located in the State of Ohio, and is duly qualified to do business in the State of California. The sole member of PNCEF is now, and at all times material hereto has been, PNC Bank, National Association, a national banking association organized and existing under and by virtue of the laws of the United States of America, and a citizen of the State of Pennsylvania, with its main office located in the State of Pennsylvania.

4. Plaintiff is informed and believes, and based thereon alleges, that defendant BPMB, Inc. ("BPMB") is a corporation organized and existing under the laws of the State of California, and has its principal place of business in the County of Orange, State of California.

5. Plaintiff is informed and believes, and based thereon alleges, that defendant Michael Mai ("Mai") is a citizen of the State of California residing in the County of Orange, State of California, and is the president of BPMB.

### C. The Financing Agreement

6. On or about June 14, 2010, plaintiff and BPMB entered into a Financing Program Agreement (the "Financing Agreement"), a true copy of which is attached as Exhibit 1 to this Complaint, pursuant to which the parties agreed, among other things, as follows:

    a. BPMB would, from time to time, obtain all necessary information and submit applications to plaintiff for credit approval for plaintiff's financing the acquisition of various Microsoft products and/or third party computer

hardware and software products distributed by, and related services to be performed by, BPMB pursuant to written contracts with its customers;

    b.    Plaintiff would employ reasonable efforts to determine the creditworthiness of BPMB's customers; and

    c.    If plaintiff approved a proposed transaction between BPMB and its customer, and the customer executed plaintiff's form Installment Payment Agreement ("IPA") agreeing to make periodic payments to plaintiff, and the other terms and conditions set forth in the Financing Agreement were satisfied, plaintiff would pay BPMB or, if applicable, the third party provider, for the products and services covered by the IPA.

    7.    The Financing Agreement also contains the following promises, among others, by BPMB to plaintiff whenever BPMB submitted an invoice for products and/or services for funding by plaintiff:

    a.    All invoices for products and services that BPMB submitted to plaintiff were true and correct;

    b.    BPMB had fully informed plaintiff of all material information relating to the proposed transaction;

    c.    BPMB had not made any material misrepresentations to plaintiff; and

    d.    Unless plaintiff had expressly agreed to advance funding, the products covered by the invoice had either been delivered to or unconditionally accepted by BPMB's customer or the customer had irrevocably directed plaintiff to pay BPMB or a third party provider for the products, and any services covered by the invoice had been agreed to in writing by the customer.

    **D.**    **The Fraudulent JAC Transaction**

    8.    On or about July 26, 2010, BPMB, through Mai, submitted an application to plaintiff under the Financing Agreement seeking to obtain financing for the purchase from BPMB of certain computer hardware and software and related

services (collectively, the "Products and Services") by one of BPMB's alleged customers, JAC. Instrument Company ("JAC"), a supplier and distributor of durable medical equipment. Defendants also provided plaintiff with financial statements that were purportedly obtained from JAC. BPMB identified Michael Zeman ("Zeman") as JAC's authorized contact.

9. Plaintiff subsequently approved the application to finance JAC's acquisition of the Products and Services.

10. On or about August 27, 2010, Mai emailed to plaintiff a quote for the Products and Services to be sold to JAC. Plaintiff subsequently prepared documents evidencing the financing transaction, including an IPA between plaintiff and JAC (the "JAC IPA"), pursuant to which JAC would finance the purchase price of $935,795 for the Products and Services through 36 monthly payments of $28,515.36 to plaintiff, commencing on October 2, 2010.

11. On or about September 1, 2010, plaintiff received from Mai the transaction documents, including the JAC IPA, executed by Zeman on behalf of JAC purportedly as its chief operating officer, and a Certification of Secretary purportedly signed by JAC's secretary or assistant secretary, identified as Henry Shibata ("Shibata"), authorizing Zeman to sign the JAC IPA on JAC's behalf. Plaintiff contacted Zeman to confirm that JAC was in fact acquiring the Products and Services. Zeman provided such confirmation, and authorized plaintiff to pay BPMB for the Products and Services.

12. On or about September 3, 2010, plaintiff funded the transaction evidenced by the JAC IPA and wired funds in the amount of $935,795 to BPMB's bank account.

E. **Discovery of the Fraud**

13. While the transaction with BPMB and JAC was pending, BPMB, through Mai, submitted an application to obtain financing for the acquisition by another purported customer, Aegis Technologies Group, Inc. ("Aegis"), of certain

4
Complaint

equipment from BPMB. During the course of processing the application, Mai requested that plaintiff change Aegis's billing address. When plaintiff contacted Aegis to confirm the address change, Aegis's president informed plaintiff that Aegis was not acquiring any equipment from BPMB, knew nothing about the application submitted by Mai, and had not made any request for an address change.

14. Concerned that Mai was engaging in fraudulent transactions, plaintiff contacted Shibata of JAC to confirm that he had in fact signed the Certification of Secretary authorizing Zeman to enter into the JAC IPA with plaintiff. Shibata, who is also JAC's president, informed plaintiff that he had not signed the Certification of Secretary, had not authorized Zeman to acquire the Products and Services from BPMB, and knew nothing about the transaction. Shibata also informed plaintiff that Zeman was not JAC's chief operating officer, but a sales representative.

## FIRST CLAIM FOR RELIEF

(Against all Defendants for Fraud)

15. Plaintiff incorporates by this reference the allegations of paragraphs 1 through 14, inclusive, of the General Allegations.

16. In or around July and August 2010, defendants, through Mai, made the following material representations of fact to plaintiff (the "Representations"):

    a. JAC desired to obtain from BPMB the Products and Services and to finance such acquisition through plaintiff;

    b. Zeman was JAC's authorized contact with authority to enter into the transactions with BPMB and plaintiff;

    c. Shibata authorized Zeman to execute transaction documents, including the JAC IPA, on JAC's behalf;

    d. JAC authorized the submission of its financial statements to plaintiff for consideration in determining JAC's creditworthiness;

    e. The transaction documents purportedly signed by JAC were valid and binding on JAC; and

   f. Defendants intended to deliver to JAC the Products and Services represented by the invoice submitted to plaintiff.

17. Plaintiff is informed and believes, and based thereon alleges, that the Representations were false when made by defendants, and that Shibata had not actually authorized Zeman to acquire the Products and Services from BPMB or obtain financing of such acquisition through plaintiff, and that defendants had no intention of delivering the Products and Services to JAC.

18. Plaintiff is informed and believes, and based thereon alleges, that at the time defendants made the Representations, they knew that the Representations were false, and intended to deceive plaintiff and to induce plaintiff to rely on the Representations.

19. In reasonable reliance upon the truth of the Representations, plaintiff entered into the JAC IPA, wired funds in the sum of $935,795 to BPMB, and incurred other costs and expenses in connection with the transaction.

20. Plaintiff is informed and believes, and based thereon alleges, that defendants have not, and will not, deliver the Products and Services to JAC, and that JAC disclaims any obligation to make the payments required under the JAC IPA to plaintiff.

21. As a direct and proximate result of defendants' fraud, plaintiff has been damaged in a sum as yet unascertained, but in no event less than $935,795. Plaintiff will seek leave of Court to amend this Complaint to set forth the true nature and full extent of its damages when ascertained or at the time of trial.

22. Plaintiff is informed and believes, and based thereon alleges, that in making the Representations, and in inducing plaintiff to enter into the JAC IPA with JAC and to fund the transaction, defendants, through Mai, acted with actual fraud and oppression in that they knew JAC had not authorized the transaction and had no intention of delivering the Products and Services to JAC. Plaintiff is further informed and believes, and based thereon alleges, that such acts were done with the

knowledge, approval, and ratification of BPMB's officers. By reason thereof, plaintiff is entitled to recover punitive damages against defendants pursuant to Civil Code Section 3294 in such sum as shall be ascertained at the time of trial.

### SECOND CLAIM FOR RELIEF

(Against All Defendants for Imposition of Constructive Trust)

23. Plaintiff incorporates by this reference the allegations of paragraphs 1 through 14, inclusive, of the General Allegations, and paragraphs 16 through 20, inclusive, of the First Claim for Relief.

24. Plaintiff is informed and believes, and based thereon alleges, that defendants are in possession of the $935,795 they fraudulently induced plaintiff to wire into their Bank of America bank account. Such funds are plaintiff's property, and defendants have no right to retain such funds.

25. By reason of their wrongful receipt and retention of funds belonging to plaintiff, defendants are involuntary trustees and hold the funds in constructive trust for plaintiff's benefit with a duty to convey such funds to plaintiff.

### THIRD CLAIM FOR RELIEF

(Against All Defendants for Negligent Misrepresentation)

26. Plaintiff incorporates by this reference the allegations of paragraphs 1 through 14, inclusive, of the General Allegations, and paragraphs 16, 17, 19, and 20 of the First Claim for Relief.

27. Plaintiff is informed and believes, and based thereon alleges, that at the time defendants made the Representations, they had no reasonable grounds for believing the Representations to be true, and intended for plaintiff to rely thereon.

28. As a direct and proximate result of defendants' negligent misrepresentations, plaintiff has been damaged in a sum as yet unascertained, but in no event less than $935,795. Plaintiff will seek leave of Court to amend this Complaint to set forth the true nature and full extent of its damages when ascertained or at the time of trial.

## FOURTH CLAIM FOR RELIEF

(Against All Defendants for Conversion)

29. Plaintiff incorporates by this reference the allegations of paragraphs 1 through 14, inclusive, of the General Allegations, and paragraphs 16 through 20 of the First Claim for Relief.

30. Plaintiff is now, and at the time of defendants' acts of conversion alleged herein was, the owner, and had the immediate right to possession, of the $935,795 erroneously wired to BPMB's bank account (the "Converted Funds").

31. Defendants have wrongfully taken the Converted Funds and converted them to their own use and benefit and have failed and refused to return the Converted Funds to plaintiff.

32. As a direct and proximate result of defendants' acts of conversion, plaintiff has suffered damages in the amount of the Converted Funds.

33. Subsequent to the time of defendants' acts of conversion, and prior to the date of filing this Complaint, plaintiff has expended time and incurred expense, and will continue to expend time and incur expense, in pursuit of the Converted Funds, all to plaintiff's further damage in an amount not presently known. Plaintiff will seek leave of Court to amend this Complaint to set forth the true nature and full extent of its damages when ascertained or at the time of trial.

34. Plaintiff is informed and believes, and based thereon alleges, that in converting the funds as aforesaid, defendants, through Mai, acted with actual fraud and oppression in that they knew they were not entitled to the Converted Funds since they knew JAC had not authorized the transaction and that they had no intention of delivering the Products and Services to JAC. By reason thereof, plaintiff is entitled to recover exemplary damages against defendants pursuant to Civil Code Section 3294 in such sum as shall be determined at trial.

## FIFTH CLAIM FOR RELIEF

(Against BPMB for Breach of Contract)

35. Plaintiff incorporates by this reference the allegations of paragraphs 1 through 14, inclusive, of the General Allegations.

36. Plaintiff has performed all of its obligations under the Financing Agreement, except for those obligations excused, waived, or made impossible by BPMB's conduct.

37. BPMB has breached the Financing Agreement by, among other things, the following:

   a. Submitting the invoice for the Products and Services that was not true and correct;

   b. Submitting an invoice for products and services that were allegedly being purchased by Aegis from BPMB that was not true and correct;

   c. Failing to inform plaintiff of all material information relating to the transaction with JAC, including without limitation that Zeman was not actually authorized by Shibata to sign the JAC IPA on JAC's behalf and that defendants had no intention of delivering the Products and Services to JAC;

   d. Failing to inform plaintiff of all material information relating to the proposed transaction with Aegis;

   e. Making material misrepresentations to plaintiff about the JAC transaction, including without limitation that Shibata had actually authorized Zeman to sign the JAC IPA on JAC's behalf and that defendants intended to deliver the Products and Services to JAC; and

   f. Making material misrepresentations to plaintiff about the proposed Aegis transaction, including without limitation that Aegis authorized the acquisition of products and services from BPMB when it had not, that the financial statements submitted by defendants purportedly for Aegis were true and correct and authorized by Aegis when in fact such financial statements were not those of Aegis,

which had not authorized the transmission of its financial statements to plaintiff, and that Aegis's president had specified a contact telephone number and email address when, upon information and belief, defendants in fact fabricated them to mislead and deceive plaintiff.

38. As a direct and proximate cause of BPMB's breach of the Financing Agreement, plaintiff has been damaged in a sum as yet unascertained, but in no event less than $935,795. Plaintiff will seek leave of Court to amend this Complaint to set forth the true nature and full extent of its damages when ascertained or at the time of trial.

39. The Financing Agreement provides among other things that in the event of a dispute arising thereunder, the prevailing party shall be entitled to its reasonable attorneys' fees and costs incurred in enforcing the Financing Agreement. Plaintiff accordingly is entitled to recover its attorneys' fees and costs incurred in initiating and prosecuting this action.

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1. On the First Claim for Relief for Fraud against all defendants:

    a. For damages in such sum in excess of $935,795 as shall be proven at trial;

    b. For prejudgment interest thereon; and

    c. For exemplary damage in such amount as shall be determined at trial.

2. On the Second Claim for Relief for Imposition of Constructive Trust against all defendants, for an order that defendants hold the funds wired into BPMB's bank account in constructive trust for the benefit of plaintiff, and have a duty to convey such funds to plaintiff.

3. On the Third Claim for Relief for Negligent Misrepresentation against all defendants:

3. On the Third Claim for Relief for Negligent Misrepresentation against all defendants:

    a. For damages in such sum in excess of $935,795 as shall be proven at trial; and

    b. For prejudgment interest thereon.

4. On the Fourth Claim for Relief for Conversion against all defendants:

    a. For damages in such sum in excess of $935,795 as shall be proven at trial;

    b. For reimbursement of plaintiff's time and expense incurred in pursuit of the wrongfully converted funds in such sum as shall be determined at trial;

    c. For prejudgment interest on the foregoing amounts; and

    d. For exemplary damage in such amount as shall be determined at trial.

5. On the Fifth Claim for Relief for Breach of Contract against BPMB:

    a. For damages in such sum in excess of $935,795 as shall be proven at trial; and

    b. For prejudgment interest thereon.

6. On all claims for relief:

    a. For plaintiff's reasonable attorneys' fees incurred herein;

    b. For costs of suit incurred herein; and

    c. For such other and further relief as the Court deems just and proper.

Dated: October 20, 2010

LEO D. PLOTKIN
JOHN P. MERTENS
LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations

By: *[signature]*
LEO D. PLOTKIN
Attorneys for Plaintiff PNC, LLC dba PNC Equipment Finance

JURY TRIAL DEMAND

Plaintiff PNCEF, LLC, dba PNC Equipment Finance hereby demands trial by jury on all issues so triable.

Dated: October 20, 2010

LEO D. PLOTKIN
JOHN P. MERTENS
LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations

By: *[signature]*
LEO D. PLOTKIN
Attorneys for Plaintiff
PNC, LLC dba PNC Equipment Finance

**Microsoft Financing**   
**PNC EQUIPMENT FINANCE**

PNC Partner ID 30873
Microsoft Partner ID 2951817

## FINANCING PROGRAM AGREEMENT ("AGREEMENT")

This Financing Program Agreement is made this 14<u>th</u> day of <u>June, 2010</u>, by and between <u>BPMB, Inc.</u>, with an address of <u>19621 Dearborne Circle, Huntington Beach, California 92648</u> ("you", "your", "your company") and PNCEF, LLC, dba PNC Equipment Finance ("we", "us", "our"). The purpose of this Agreement is to set forth the terms and conditions under which we may from time to time finance amounts payable by your customers to you and/or your supplier for your customers' acquisition and/or use of computer hardware and/or software, and/or services related thereto in relation to the Microsoft Financing Corporation Financing Program ("Financing Program").

1. **CREDIT APPROVALS.** From time to time you will obtain all necessary information for and submit applications to us for credit approval regarding financing of various Microsoft Corporation ("Microsoft") products and/or other third party computer hardware and software products distributed by you (collectively, "Products") and various services related thereto to be performed by you ("Services") under a written agreement between you and the Customer ("Contract"). We will use our reasonable efforts to determine the creditworthiness of an applicant within a commercially reasonable time after our receipt of the credit information we have requested. Notice of the approval or rejection of an applicant will be promptly conveyed to your company. All credit approvals will be valid for 90 days, provided that we may cancel the approval if there is a material adverse change in the financial condition of an approved applicant ("Customer") prior to our paying you for the Products as determined by us, acting as a commercially reasonable lender. We or Microsoft Financing Corporation ("MSF") will supply you with our financing rate factors to be used in the pricing of our IPAs, which factors are subject to change by us upon notice to you. **You agree not to submit any applications for an IPA with a term exceeding 60 months.** For the purposes of this Agreement, any reference to a "IPA" means collectively, our standard form of Installment Payment Agreement or Master Installment Payment Agreement and Schedules or other financing agreements. You may also obtain executed IPAs and related documents from Customers. You will immediately deliver all such executed IPAs and related documents directly to us.

2. **FUNDING.** We will pay you, or the third party provider, as applicable, for the Products and Services covered by an IPA within 2 business days after we receive: (a) an original IPA signed by the Customer; (b) the advance payment called for in the IPA if any; (c) an itemized original invoice from your company to us for the aggregate price of the Products and Services charged to the Customer; (d) confirmation from the Customer that the Products have been delivered and/or accepted or the Customer has unconditionally directed us to pay you or the third party provider for the Products and Services (except as provided under section 9, to include a properly completed Acceptance and Pay Proceeds Certificate); and (e) all other documentation or information we reasonably require. You agree to bear the risk of any loss or damage to the Products until it has been delivered and accepted by the Customer. You will determine if taxes are due under the Contract and you will add the taxes to the Products and Services and you will timely pay such taxes to the appropriate taxing authority(ies). For the portion of the Products that are provided through Microsoft, and for which you owe Microsoft, you agree that we may split fund the IPA by paying Microsoft directly for that portion of the amount financed under the IPA that are related to Microsoft provided Products and the balance of the amount financed under the IPA will be paid to you or the third party provider as applicable. We will provide you with confirmation of any payment made directly to Microsoft upon request.

3. **ASSIGNMENT.** You and we are not agents of each other and cannot act as such as you and we are separate legal entities and no partnership or joint venture is formed or implied under this Agreement. You may not assign your rights or delegate your duties hereunder. We may, without any consent or notice, assign any or all of our rights and/or delegate our duties hereunder to any entity or person.

4. **CUSTOMERS.** You agree to respond promptly to all Customer complaints concerning the performance of the Products and to comply with and fulfill all your warranties, express or implied, relating to the Products and Services (and to permit any such warranties to be transferred to and be enforceable by the Customer during the term of the IPA). You agree to perform all upgrades, maintenance and/or service covering the Products and Services as required under the Contract.

5. **ECOA.** Unless you have provided the applicant with a copy of our credit application, you agree that if an applicant for financing is declined by us and all other finance sources to whom you submit information for credit approval, you will timely provide such applicant with the notice relating to the applicant's rights and other information required under the Federal Equal Credit Opportunity Act.

6. **PROMISES.** You promise us whenever an invoice for Products and Services, as applicable, is submitted for funding that: (i) As of the date of any Schedules, neither you nor the Customer is in default under the Contract; (ii) All invoices you submit to us are true and correct and accurately reflect the market price for the Products and Services; (iii) You have fully informed us of all material information known to you concerning the applicant, the prospective IPA, and the Products and Services; (iv) No material misrepresentations have been made by you to the Customer or to us; (v) You have not provided the Customer with any part of the advance IPA payment; (vi) The Products and Services are solely for a business or commercial purpose, and will not be used for personal, family or household purposes; (vii) The Products shall perform as warranted under the Contract and you will timely perform all of your Service obligations under the Contract and the Customer's obligations under the IPA are not and will not become subject to any valid and enforceable right of set-off, counterclaim or deduction directly related to any acts or omissions by you; (viii) You are authorized to sell, license and/or sub-license the Products and perform the Services, and upon payment by us to you of the price for the Products and Services under section 2. above, you will transfer any applicable license and/or sublicense to the Customer; (ix) except as agreed to in Section 9 below, the Products have either been delivered to and unconditionally accepted by the Customer or the Customer has irrevocably directed us to pay you or a third party provider for the Products and / or Services, and the Services have been agreed to in writing by the Customer; (x) You agree that you will not (a) accept (other than advances or security deposits) or make any IPA payments by or on behalf of a Customer; (b) consent to the return or surrender of Products or cancellation of the Services by a Customer without our prior written consent; (c) adjust the pricing of the Products or Services or refund / credit back to the Customer any portion of the money we paid to you under this Agreement; **(xi) Should any subsequent change to the Contract result in a diminution of Products or Services you agree that any resulting credit or refund shall be paid directly to lender and not to the Customer;** and (xii) The term of the proposed IPA does not exceed 60 months.

Microsoft Finance is a trade name of the Microsoft group of companies and is used by PNCEF, LLC under license.

**EXHIBIT  1**

Exhibit 1

13

7. **CUSTOMER DEFAULT.** In the event a Customer defaults on a Contract and you do not fulfill, or any portion of the Services, you shall reimburse us upon demand for all such unperformed Services funded in advance, on a pro rata basis from the date of default or the date you ceased to provide such Services, along with any costs incurred in connection therewith. In the event a Customer is in default of its IPA, you agree, upon written request from us, and to the extent you are legally permitted, to terminate such Customer's license or sublicense for any software included in the Products and to cease providing services financed under the IPA.

8. **ADVANCE FUNDING.** From time to time you may request that we fund to you all or a portion of the Product Cost and/or Services to be financed by us pursuant to a Schedule in advance of the delivery of the Product to the Customer or the performance of the Services or our receipt from you and the Customer of all of the items that would otherwise be required by us prior to funding. If we, in our sole discretion, agree to advance fund any such amount ("Advance Funded Amount"), any such funding shall be done pursuant to the terms of this Advance Funding section the terms of which you unconditionally agree to. In the event that a Customer defaults under an IPA and such default is due or related to your failure to provide any or all of the Products or Services (or your non-compliance under the Contract) you will promptly pay us, upon our request, the Advance Funded Amount less the principal portion of any payments we receive from the Customer under the Schedule. You hereby also grant us the right to directly set-off, or cause to be set-off, any and all amounts due or that become due under this section against (x) any amounts we may owe to you for any reason, or (y) any amounts due to you and collected by us on your behalf. Our rights and remedies under this section shall not be exclusive, and you agree that we may exercise any other right or remedy available to us at law or in equity. All defined terms used in this Advance Funding section but not defined herein will have the meaning given them in the applicable IPA.

9. **REMEDIES.** If you breach any of your promises, warranties or obligations contained in this Agreement and as a result of your breach, the Customer is entitled to withhold payments to us under the IPA, you agree upon our request, to purchase the applicable IPA from us at our net book value, (as determined by us in accordance with generally accepted accounting principles), plus any applicable taxes. We will then assign to you, without recourse, our interest in that IPA and transfer to you "AS-IS", "WHERE-IS" any interest we have in the related Products and the payment for the Services. You also agree that we may exercise any other right or remedy available to us at law or in equity. Upon the occurrence of any misrepresentation or breach by your company under this Agreement, we may elect to rescind any pending IPA credit approvals (whether given to you or to a Customer, and whether given orally or in writing).

10. **TERM.** This Agreement may be terminated by either you or us upon 30 days' written notice or immediately by the non-breaching party after breach of this Agreement by the other party. Upon termination of this Agreement, each party's rights and obligations will remain in effect for all IPAs entered into before the date of termination.

11. **INDEMNIFICATION.** You will indemnify and hold us and MSF and our and their respective affiliates and employees harmless from and against any and all claims, losses, suits, actions, damages, and costs and expenses arising out of or related in any way to any Products, this Agreement, or the Financing Program except if directly due to our gross negligence or willful misconduct.

12. **MISCELLANEOUS.** (I) YOU AGREE THAT THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF OHIO AND YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN OHIO (ii) YOU AND WE EXPRESSLY WAIVE ANY RIGHTS TO A TRIAL BY JURY. (iii) In the event of a dispute arising out of this Agreement the prevailing party shall be entitled to its reasonable attorney fees and other costs incurred in enforcing or defending this Agreement, (iv) you agree that the terms and conditions contained in this Agreement make up the entire agreement between you and us regarding the financing of the Products. Any change in any of the terms and conditions of this Agreement must be in writing and signed by us, (v) if we delay or fail to enforce any of our rights under any Schedule or this Master Agreement, we will still be able to enforce those rights at a later time, (vi) all notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U.S. Mail, addressed to the party receiving the notice at its address shown on the front of each Schedule (or to any other address specified by that party in writing) with postage prepaid, (vii) all of our rights and indemnities will survive the termination of this Agreement.

| VENDOR: BPMB, Inc. | PNCEF, LLC, dba PNC Equipment Finance |
|---|---|
| Signature: *Michael Mai* | Signature: *[signature]* |
| Name/Title: Michael Mai, President | Name/Title: VP, Operations |
| Print Name: Michael Mai | Print Name: dolly garrett |
| Date Signed: 06/14/2010 | Date Signed: 6.15.10 |

Microsoft Finance is a trade name of the Microsoft group of companies and is used by PNCEF, LLC under license.

Exhibit 1

/4

Microsoft Financing 

## CERTIFICATION OF SECRETARY

The undersigned, hereby certifies to PNCEF, LLC, dba PNC Equipment Finance ("Payee"), its successors and assigns, that the person executing the foregoing Financing Program Agreement (the "Agreement") has full right, capacity and power and is duly authorized by all requisite internal action to execute, deliver and bind the maker thereof, and that the signature appearing on the Agreement is in fact the signature of the person so authorized.

Dated this ___14___ date of June_____, 2010___.

Customer: **BPMB, Inc.**

_____
Secretary or Assistant Secretary

Microsoft Finance is a trade name of the Microsoft group of companies and is used by PNCEF, LLC under license.    Exhibit 1

15

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Patrick J. Walsh.

The case number on all documents filed with the Court should read as follows:

**SACV10- 1606 DOC (PJWx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [X] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PNCEF, LLC, dba PNC EQUIPMENT FINANCE, an Indiana limited liability company,<br><br>PLAINTIFF(S)<br><br>v.<br><br>BPMB, INC., a California corporation, and MICHAEL MAI, an individual,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV10-1606 DOC(PJWx)**<br><br>**SUMMONS** |

TO:   DEFENDANT(S): BPMB, INC., a California corporation, and MICHAEL MAI, an individual

A lawsuit has been filed against you.

Within  21  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Leo D. Plotkin , whose address is Levy, Small & Lallas, 815 Moraga Drive, Los Angeles, CA 90049 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  OCT 20 2010      By:  Nancy Cases
                                        Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)   SUMMONS
CCD-1A

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
PNCEF, LLC, dba PNC EQUIPMENT FINANCE, an Indiana limited liability company

**DEFENDANTS**
BPMB, INC., a California corporation and MICHAEL MAI, an individual

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Levy, Small & Lallas
Leo D. Plotkin, Esq.
815 Moraga Drive, Los Angeles, CA 90049-1633
(310) 471-3000
Email: lplotkin@lsl-la.com

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify):
- ☐ 6 Multi-District Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No    ☒ **MONEY DEMANDED IN COMPLAINT:** $ 935,795

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fraud, negligent misrepresentation, conversion, breach of contract; no claim arises under U.S. Civil Statute

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☒ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: SACV10-1606 DOC(PJWx)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)     CIVIL COVER SHEET     Page 1 of 2

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Indiana: state of formation<br>Ohio: state of principal place of business |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County: county of residence of defendant Michael Mai, and location of principal place of business for defendant BPMB, Inc. |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County for all claims |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _[signature]_     Date   10/20/10

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |