# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF DOCUMENT DISCREPANCIES

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

NOV 23 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

To: ☑ U.S. District Judge / ☐ U.S. Magistrate Judge   Carter

From: J. DeBose , Deputy Clerk   Date Received: 11/23/10

Case No.: SACV10-1606 DOC   Case Title: PNCEF LLC v. BPMB Inc. et al,

Document Entitled: Certification; List of exhibits; Notice

Upon the submission of the attached document(s), it was noted that the following discrepancies exist:

☐ Local Rule 11-3.1  Document not legible
☐ Local Rule 11-3.8  Lacking name, address, phone and facsimile numbers
☐ Local Rule 11-4.1  No copy provided for judge
☐ Local Rule 19-1  Complaint/Petition includes more than ten (10) Does or fictitiously named parties
☐ Local Rule 15-1  Proposed amended pleading not under separate cover
☐ Local Rule 11-6  Memorandum/brief exceeds 25 pages
☐ Local Rule 11-8  Memorandum/brief exceeding 10 pages shall contain table of contents
☐ Local Rule 7.1-1  No Certification of Interested Parties and/or no copies
☐ Local Rule 6.1  Written notice of motion lacking or timeliness of notice incorrect
☐ Local Rule 56-1  Statement of uncontroverted facts and/or proposed judgment lacking
☐ Local Rule 56-2  Statement of genuine issues of material fact lacking
☐ Local Rule 7-19.1  Notice to other parties of ex parte application lacking
☐ Local Rule 16-6  Pretrial conference order not signed by all counsel
☐ FRCvP Rule 5(d)  No proof of service attached to document(s)
☑ Other: Case designated for e-filing pursuant to GO 10-07,

**Note: Please refer to the court's Internet website at www.cacd.uscourts.gov for local rules and applicable forms.**

═══════════════════════════════════════════════════════════

### ORDER OF THE JUDGE/MAGISTRATE JUDGE

IT IS HEREBY ORDERED:

☐ The document is to be filed and processed. The filing date is ORDERED to be the date the document was stamped "received but not filed" with the Clerk. Counsel* is advised that any further failure to comply with the Local Rules may lead to penalties pursuant to Local Rule 83-7.

_____         _____
Date                            U.S. District Judge / U.S. Magistrate Judge

☑ The document is **NOT** to be filed, but instead **REJECTED**, and is ORDERED returned to *counsel. *Counsel shall immediately notify, in writing, all parties previously served with the attached documents that said documents have **not** been filed with the Court.

11-23-10                        David O. Carter
_____         _____
Date                            U.S. District Judge / U.S. Magistrate Judge

*The term "counsel" as used herein also includes any pro se party. See Local Rule 1-3.

CV-104A (12/03)         **NOTICE OF DOCUMENT DISCREPANCIES**

GPO: U.S. GOVERNMENT PRINTING OFFICE: 2007 672-579

NAME, ADDRESS & TELEPHONE NUMBER OF ATTORNEY(S) FOR, OR, PLAINTIFF OR
DEFENDANT IF PLAINTIFF OR DEFENDANT IS PRO PER

Brenda E. Vargas, Esq. #153230
Law Office of Brenda E. Vargas
1605 W. Olympic Blvd., Ste. 1040
Los Angeles, CA  90015



RECEIVED & RETURNED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

NOV 2 3 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

ATTORNEYS FOR:  Defendant, Michael Mai

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| PNCEF, LLC dba PNC EQUIPMENT FINANCE, an Indiana Limited Liability Company,<br><br>Plaintiff(s),<br><br>v.<br><br>BPMB, INC., a California Corporation, and MICHAEL MAI, an individual,<br><br>Defendant(s) | CASE NUMBER:<br><br>SACV10-1606 DOC(PJWX)<br><br>CERTIFICATION AND NOTICE<br>OF INTERESTED PARTIES<br>(Local Rule 7.1-1) |
|---|---|

TO:      THE COURT AND ALL PARTIES APPEARING OF RECORD:

The undersigned, counsel of record for  Michael Mai
(or party appearing in pro per), certifies that the following listed party (or parties) may have a direct, pecuniary interest in the outcome of this case.  These representations are made to enable the Court to evaluate possible disqualification or recusal.  (Use additional sheet if necessary.)

|                        PARTY                        |              CONNECTION              |
|---|---|
| (List the names of all such parties and identify their connection and interest.) ||
| PNCEF, LLC, dba PNC Equipment Finance, an Indiana limited liability company, | Plaintiff |
| BPMB, INC., a California corporation, | Defendant |
| MICHEAL MAI, an individual, | Defendant |
| PNC BANK, National Association | Sole member of Plaintiff |

November 23, 2010
Date

Sign

RECEIVED
BUT NOT FILED

NOV 2 3 2010

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION
BY                              DEPUTY

Brenda E. Vargas for Defendant, Michael Mai
Attorney of record for or party appearing in pro per

1  Brenda E. Vargas, Esq. SBN:153230
   **LAW OFFICES OF BRENDA E. VARGAS**
2  1605 W. Olympic Blvd., Ste. 1040
   Los Angeles, CA 90015
3  213-427-0669
4  213-427-1145 FAX
5  Attorneys for Defendant Michael Mai

RECEIVED & RETURNED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

**NOV 23 2010**

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

6
7              **UNITED STATES DISTRICT COURT**
8      **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

9  PNCEF, LLC, dba PNC EQUIPMENT          )  Case No.: SACV10-1606 DOC(PJWX)
   FINANCE, an Indiana limited liability company  )  Judge:
10                                         )  Dept.:
                                           )
11              Plaintiff,                 )  **DEFENDANT MICHAEL MAI'S NOTICE**
                                           )  **OF DEMURRER AND DEMURRER TO**
12      vs.                                )  **PLAINTIFF'S COMPLAINT;**
                                           )  **MEMORANDUM OF POINTS AND**
13  BPMB INC, a California Corporation, and  )  **AUTHORITIES**
    MICHAEL MAI, an individual             )
14                                         )  **DATE:** January 24, 2011
                                           )  **TIME:** 8:30
15              Defendants.                )  **DEPT:** 9D
                                           )
16                                         )
                                           )  **Case Filed Oct 20, 2010**
17                                         )  **No Trial Date**
                                           )
18                                         )
                                           )
19                                         )
                                           )
20  ─────────────────────────────────────  )

21      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS ACTION:

22

23      This demurrer will be based upon this Notice, the attached Demurrer, accompanying

24  Memorandum of Points and Authorities, and all files, records and documents on file in this action, and

25  upon such further argument and matters as may be presented at the hearing.

26  Dated: November 23, 2010

RECEIVED
BUT NOT FILED

**NOV 23 2010**

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION
BY                              DEPUTY

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF BRENDA E. VARGAS

By:

Brenda Vargas
Attorneys for Michael Mai

**DEMURRER**

Defendant demurs to Plaintiff's Complaint on each of the following grounds:

1.     The First Cause of Action against Defendant for Fraud which fails to state a cause of action pursuant to Federal Rules of Civil Procedures Rule 12(b)(6).

2.     The Second Cause of Action against Defendant for Imposition of Constructive Trust fails to state a cause of action pursuant to Federal Rules of Civil Procedures Rule 12(b)(6).

3.     The Third Cause of Action against Defendant for Negligent misrepresentation fails to state a cause of action pursuant to Federal Rules of Civil Procedures Rule 12(b)(6) .

4.     The Fourth Cause of Action against Defendant for Conversion is uncertain and fails to state a cause of action pursuant to Federal Rules of Civil Procedures Rule 12(b)(6).

5.     The Fifth Cause of Action against Defendant for Breach of Contract is uncertain and fails to state a cause of action pursuant to Federal Rules of Civil Procedures Rule 12(b)(6).

Defendant seeks an order sustaining his Demurrer without leave to amend.

Dated: November 2̸3̸, 2010

LAW OFFICES OF BRENDA E. VARGAS

By:

Brenda Vargas
Attorneys for Michael Mai

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND STATEMENT OF FACTS

In this lawsuit, Plaintiff PNCEF, LLC dba PNC EQIPMENT FINANCE ("Plaintiff") alleges that Defendant BPMB Inc and Michael Mai ("Defendants") breached of the financing agreement imposed a Constructive Trust, made a Negligent Misrepresentation, which resulted in a conversion.

Defendants deny each and every allegation for the reasons set forth herein. Therefore, Defendants request that the Court sustain this demurrer to Plaintiff's Complaint without leave to amend.

### II.   APPLICABLE LAW

The function of a demurrer is to test the sufficiency of a complaint by raising questions of law.  See *Salimi v State Compensation Ins. Fund*, 54 Cal.App.4th 216, 219 (1997).  In general, a demurrer "searches the complaint" or a particular count to which it is directed, for any and every failure to state a material fact.  *See* 5 B.E. Witkin, *California Procedure* § 905, at 366 (4th ed. 1997).  For the purpose of testing the sufficiency of a cause of action, a demurrer admits the truth of all material facts properly pled, but not contentions, deductions, or conclusions of fact or law.  *See, e.g., Lick Mill Creek Apartments v. Chicago Title Ins. Co.*, 231 Cal.App.3d 1654, 1657 (1991); *B & P Dev. Corp. v. City of Saratoga*, 185 Cal.App.3d 949, 952 (1986).  If a complaint fails to plead any essential element of a particular cause of action, a demurrer should be sustained to that cause of action.  See *Sher v. Leiderman*, 181 Cal.App.3d 867, 885-86 (1986); *see also Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th 857, 879-81 (1992).

When any ground for objection to a complaint appears on the face thereof, the objection on that ground may be taken by a demurrer to the pleading. Cal. Civ. Proc. Code § 430.30(a).  A trial court does not abuse its discretion by sustaining a general demurrer without leave to amend if it appears from the complaint that under applicable substantive law, there is no reasonable possibility

1  that an amendment could cure the complaint's defect. ***Dalton v. East Bay Municipal Utility***

2  ***District*** (1993) 18 Cal.App.4th 1566, 1570-71. Moreover, when a complaint is successfully

3  challenged by a general demurrer, the burden is on the plaintiff to demonstrate how the complaint

4  might be amended to cure it of the defect. ***Association of Community Organizations for Reform***

5  ***Now v. Dept. of Industrial Relations*** (1995) 41 Cal.App.4th 298, 302.

6

7  III.    **THE FIRST CAUSE OF ACTION FOR FRAUD**

8

9      On paragraph 6, the First Cause of action for Fraud is invalid because BPMB obtained all

10  necessary information from its client JAC and submitted the application to plaintiff for credit

11  approval.  Plaintiff employed all the efforts to determine the credit worthiness of BPMB's potential

12  customer, JAC.  BPMB is not a financial company or credit checking company so it relied on

13  plaintiff to conduct due diligence of the credit worthiness of its potential new client, JAC.  BPMB

14  followed all the plaintiff's procedure as indicated on the IPA.

15      On paragraph 7, the First Cause of action for Fraud is invalid because all invoices for

16  products and services that BPMB submitted to Microsoft were true and correct. On Dolly Garrett's

17  declaration, PNCEF contacted Michael Zeman, point of contact for JAC, to verify BPMB's

18  submitted documentation, specifically, the invoice for products and services, were true and correct.

19  PNCEF asked Michael Zeman about the change of address on the IPA and was informed that

20  plaintiff had asked BPMB to change the address on the IPA.  After confirmed conversation with

21  Michael Zeman of JAC, Dolly Garrett signed the IPA.  If PNCEF suspected a fraud on JAC, they

22  would not endorsed the IPA. PNCEF signed the IPA and continued with the financing.  BPMB had

23  fully informed plaintiff of all material information relating to the proposed transaction with its best

24  knowledge. BPMB had not made any material misrepresentations to plaintiffs.

25      On paragraph 8, the First Cause of action for Fraud is invalid because

26  Michael Zeman of JAC contacted  BPMB to engage the service and purchase

27  PNCEF's products. He declared to BPMB and PNCEF that he was the point of

28

1 | contact for JAC. PNCEF had acknowledged on Dolly Garrett's declaration that they
2 | verified Michael Zeman was indeed the point of contact for JAC. BPMB had no
3 | reason to doubt his authorization as the point of contact for JAC.

4 |      On paragraph 13, the First Cause of action for Fraud is invalid because
5 | plaintiff alleged that BPMB has submitted a financing application on behalf of
6 | Aegis without their authorization or knowledge.  See Exhibit 4, a series of emails
7 | between Michael Mai (BPMB), Mark Tiernan (Aegis) and Demetrios Geokezas
8 | (Aegis) concerning the Microsoft finance program and status it's loan.  Mark
9 | Tiernan, President of Aegis, lied to PNCEF when he informed Allen Duffin
10 | (PNCEF) that he had no knowledge of the loan and that BPMB had done it without
11 | their authorization.

12 |      On paragraph 14, the First Cause of action for Fraud is invalid because
13 | Michael Zeman is the point of contact for JAC was the only person that BPMB and
14 | PNCEF dealt with.  Plaintiff provided an IPA to BPMB for its client JAC to sign
15 | after they approved the loan.  BPMB gave Zeman the IPA document and asked him
16 | and JAC to follow the instructions provided by plaintiff. After JAC had completed
17 | the IPA document they Fedexed it back to Plaintiff. Defendants BPMB and Mai had
18 | no knowledge or control over the kind of relationship between Henry Shibata and
19 | Michael Zeman at JAC organization. Plaintiff had the option to verify all the
20 | information and parties on the signed IPA form with JAC before they counter-
21 | signed the IPA form and funded the loan.  It was negligent on the plaintiff for not
22 | verifying all the signed parties on the form.

23 |      The complaint does not have any evidence to allege that defendant had prior knowledge
24 | or knew that the representations were false concerning Henry Shibata. Moreover, that Mr.
25 | Shibata had not authorized Zeman to acquire BPMB's services and products,   Zeman was not
26 | JAC 's chief operating officer, Zeman was not JAC's authorized contact with authority to enter
27 | any contract, .

28 |

The cause of action fails to allege what intentional acts on the part of Defendant were designed to induce the plaintiff to enter into the IPA with JAC and to fund the transaction. The plaintiff as a financial institution had verified independently of all information that provided to them from JAC.

Therefore, the demurrer to Plaintiff's first cause of action for fraud should be sustained.

## IV.   THE SECOND CAUSE OF ACTION FOR IMPOSITION OF CONSTRUCTIVE TRUST

Plaintiff alleges in Paragraphs 24 and 25 that Defendant fraudulently induced plaintiff to wire into their Bank of America account the sum of the $935,795.  On September 29, 2010, JAC requested in writing to BPMB, exhibit 6, that BPMB's service were no longer required because they found a vendor that they felt best "fit" their business philosophy. They requested that all funds obtained from the loan be released to JAC Instrument, Inc. immediately. BPMB surrendered all the funds to JAC as ordered by its client.

According to plaintiff's employee Allen Duffin's declaration, he declared that "I determined through a confidential source, as part of my ongoing investigation, that BPMB had wired funds into the JAC Instrument, Inc account …" Allen Duffin, plaintiff's employee, admitted that he has violated the "Privacy Act" law by gaining illegal access to defendant's bank account.

The cause of action fails to show that BPMB is illegally holding the funds as alleged by the plaintiff.  Even the plaintiff's declaration has contradicted the second cause of action for imposition of constructive trust.

Therefore, the demurrer to Plaintiff's second cause of action for imposition of constructive trust should be sustained.

## V.     THE THIRD CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

Paragraph 27 which indicates plaintiff believed that at the time defendants made the representations, they had no reasonable grounds for believing the representations to be true, and intended for plaintiff to rely thereon.  The allegations in the Complaint are so vague as to make it impossible for Defendant to determine exactly when each of the negligent misrepresentation acts was committed.

Therefore, the demurrer to Plaintiff's third cause of action for negligent misrepresentation should be sustained.

## VI.    THE FOURTH CAUSE OF ACTION FOR CONVERSION

Plaintiff alleges in Paragraphs 29 to 34 that Defendant fraudulently induced plaintiff to wire into their Bank of America account and defendants are in possession of the $935,795. Defendant indicated on the second cause of action for imposition of constructive trust, the defendant had transferred all the funds to JAC as requested by JAC.

The cause of action fails to show that BPMB is illegally holding the funds as alleged by the plaintiff.  Even the plaintiff's declaration has contradicted the fourth cause of action for conversion.

Therefore, the demurrer to Plaintiff's fourth cause of action for conversion should be sustained.

## VII.   THE FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT

Paragraph 37, the Fifth Cause of action for Breach of Contract is invalid because plaintiff alleged that BPMB submitted an invoice for products and services for Aegis that was not true and correct.  This Aegis transaction was not materialized because Aegis informed BPMB that they don't like the financing term of the plaintiff.  BPMB has informed plaintiff that Aegis has declined to accept the Microsoft finance term from the plaintiff. There is no funds has been

issued to any party on the Aegis's transaction.

According to the Microsoft financing program that administered by the plaintiff, there is no penalty or breach of contract clause in the Microsoft financing program to penalize its partner if their client wishes to opt out of the financing program after they evaluated the term.

For the material misrepresentation, the defendant has relied on the plaintiff to verify the credit worthiness of its client due to the plaintiff business back ground as a financial institution. The plaintiff had committed negligent by failing to verify all the information on their IPA form with JAC.

Therefore, the demurrer to Plaintiff's fifth cause of action for breach of contract should be sustained.

VIII.   **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court sustain his demurrer without leave to amend.

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.

I am over the age of eighteen, and am not a party to the within action, my business

address is: 1605 W. Olympic Blvd., #1040, Los Angeles, Ca 90015.

On November 23, 2010, I served the foregoing document described

as "Notice of and Motion for Demurrer" by placing the true copies thereof enclosed in a sealed envelope

addressed:

**Mr. Leo D. Plotkin**
**LEVY, SMALL & LALLAS, LLP**
**815 Moraga Drive**
**Los Angeles, CA 90049**

By Mail: XXXX

I deposited such envelope in the mail at Los Angeles, California.

The envelope was mailed with postage thereon fully prepaid.

By person:

I handed a certified copy of said document to the above persons and/or
their agents.

Executed on November 23, 2010 at Los Angeles, California. I declare under
penalty of perjury under the Laws of the State of California that the above is true and correct. I
declare that I am employed in the office of a member of the bar of this Court at whose direction
the service was made.

----------R. Adriana Escobar----------------------          (-)-/--------------------------------------

1
Brenda E. Vargas, **Esq. SBN:153230**
**LAW OFFICES OF BRENDA E. VARGAS**
2
1605 W. Olympic Blvd., Ste. 1040
Los Angeles, CA 90015
3
213-427-0669
4
213-427-1145 FAX
5
Attorneys for Defendant Michael Mai

RECEIVED & RETURNED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

NOV 2 3 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

6

7
## UNITED STATES DISTRICT COURT

8
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

9
PNCEF, LLC, dba PNC EQUIPMENT                )   Case No.: SACV10-1606 DOC(PJWX)
FINANCE, an Indiana limited liability company )   Judge:
10                                           )   Dept.:
                                             )
11              Plaintiff,                   )   **DEFENDANT MICHAEL MAI'S  LIST OF**
                                             )   **EXHIBITS TO DEMURRER TO**
12      vs.                                  )   **COMPLAINT**
                                             )
13  BPMB INC, a California Corporation, and  )   **DATE:**
    MICHAEL MAI, an individual               )   **TIME:**
14                                           )   **DEPT:**
                                             )
15              Defendants.                  )   **Case Filed Oct 20, 2010**
                                             )   **No Trial Date**
16                                           )
                                             )
17                                           )
                                             )
18                                           )
                                             )
19                                           )
                                             )
20  _____)

21      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS ACTION:

22

23      This demurrer will be based upon this Notice, the attached Demurrer, accompanying

24  Memorandum of Points and Authorities, and The attached list of exhibits presented by defendant

25  Michael Mai.

26

27  Dated: November 23 , 2010

28

RECEIVED
BUT NOT FILED

NOV 2 3 2010

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION
BY                              DEPUTY

1

2    LAW OFFICES OF BRENDA E. VARGAS

3

4    By:
     Brenda Vargas
5    Attorneys for Michael Mai

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LIST OF EXHIBITS**

Defendant presents this list of exhibits to attached to his Notice and Motion for demurrer to Plaintiff's Complaint:

1.      PNCEF Financing agreement demonstrating Defendant as a vendor.

2.      Dolly Garrett's Declaration (PNCEF employee).

3.      Allen J. Duffin's Declaration (PNCEF employee).

4.      Emails between Defendant (Michael Mai) and Mark Tiernan of Aegis.

5.      Letter from JAC Instrument to instruct Defendant to send the MS Financial funds.

6.      Leo D. Plotkin's Declaration (PNCEF attorney).

7.      Kimberly Colonna's Declaration (PNCEF employee).

8.      Aegis' emails stating loan approval from Microsoft.

9.      Emails between Defendant (Michael Mai) and Allen J. Duffin (PNCEF employee) establishing that Aegis was informed and had authorized BPMB to obtain the loan on it's behalf.

Defendant reserves it's right to present any other evidence and/or exhibits on it's behalf at the hearing of it's Demurrer.

Dated: November 22, 2010

LAW OFFICES OF BRENDA E. VARGAS

By:
Brenda Vargas
Attorneys for Michael Mai

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California.

I am over the age of eighteen, and am not a party to the within action, my business

address is: 1605 W. Olympic Blvd., #1040, Los Angeles, Ca 90015.

On November 23, 2010, I served the foregoing document described

as "Exhibit List for Demurrer" by placing the true copies thereof enclosed in a sealed envelope

addressed:

## Mr. Leo D. Plotkin
## LEVY, SMALL & LALLAS, LLP
## 815 Moraga Drive
## Los Angeles, CA 90049

By Mail: XXXX

I deposited such envelope in the mail at Los Angeles, California.

The envelope was mailed with postage thereon fully prepaid.

By person:

I handed a certified copy of said document to the above persons and/or

their agents.

Executed on November 23, 2010 at Los Angeles, California. I declare under
penalty of perjury under the Laws of the State of California that the above is true and correct. I
declare that I am employed in the office of a member of the bar of this Court at whose direction
the service was made.

----------R. Adriana Escobar----------------------

Exhibit 1

# Microsoft Financing  PNC
### EQUIPMENT FINANCE

PNC Partner ID 30873
Microsoft Partner ID 2951817

## FINANCING PROGRAM AGREEMENT ("AGREEMENT")

This Financing Program Agreement is made this <u>14th</u> day of <u>June, 2010</u>, by and between <u>BPMB, Inc.</u>, with an address of <u>19621 Dearborne Circle, Huntington Beach, California  92648</u> ("you", "your", "your company") and PNCEF, LLC, dba PNC Equipment Finance ("we", "us", "our"). The purpose of this Agreement is to set forth the terms and conditions under which we may from time to time finance amounts payable by your customers to you and/or your supplier for your customers' acquisition and/or use of computer hardware and/or software, and/or services related thereto in relation to the Microsoft Financing Corporation Financing Program ("Financing Program").

1. **CREDIT APPROVALS.** From time to time you will obtain all necessary information for and submit applications to us for credit approval regarding financing of various Microsoft Corporation ("Microsoft") products and/or other third party computer hardware and software products distributed by you (collectively, "Products") and various services related thereto to be performed by you ("Services") under a written agreement between you and the Customer ("Contract"). We will use our reasonable efforts to determine the creditworthiness of an applicant within a commercially reasonable time after our receipt of the credit information we have requested. Notice of the approval or rejection of an applicant will be promptly conveyed to your company. All credit approvals will be valid for 90 days, provided that we may cancel the approval if there is a material adverse change in the financial condition of an approved applicant ("Customer") prior to our paying you for the Products as determined by us, acting as a commercially reasonable lender. We or Microsoft Financing Corporation ("MSF") will supply you with our financing rate factors to be used in the pricing of our IPAs, which factors are subject to change by us upon notice to you. **You agree not to submit any applications for an IPA with a term exceeding 60 months.** For the purposes of this Agreement, any reference to a "IPA" means collectively, our standard form of Installment Payment Agreement or Master Installment Payment Agreement and Schedules or other financing agreements. You may also obtain executed IPAs and related documents from Customers. You will immediately deliver all such executed IPAs and related documents directly to us.

2. **FUNDING.** We will pay you, or the third party provider, as applicable, for the Products and Services covered by an IPA within 2 business days after we receive: (a) an original IPA signed by the Customer;  (b) the advance payment called for in the IPA if any;  (c) an itemized original invoice from your company to us for the aggregate price of the Products and Services charged to the Customer;  (d) confirmation from the Customer that the Products have been delivered and/or accepted or the Customer has unconditionally directed us to pay you or the third party provider for the Products and Services (except as provided under section 9, to include a properly completed Acceptance and Pay Proceeds Certificate);  and (e) all other documentation or information we reasonably require.  You agree to bear the risk of any loss or damage to the Products until it has been delivered and accepted by the Customer.  You will determine if taxes are due under the Contract and you will add the taxes to the Products and Services and you will timely pay such taxes to the appropriate taxing authority(ies).  For the portion of the Products that are provided through Microsoft, and for which you owe Microsoft, you agree that we may split fund the IPA by paying Microsoft directly for that portion of the amount financed under the IPA that are related to Microsoft provided Products and the balance of the amount financed under the IPA will be paid to you or the third party provider as applicable. We will provide you with confirmation of any payment made directly to Microsoft upon request.

3. **ASSIGNMENT.** You and we are not agents of each other and cannot act as such as you and we are separate legal entities and no partnership or joint venture is formed or implied under this Agreement. You may not assign your rights or delegate your duties hereunder. We may, without any consent or notice, assign any or all of our rights and/or delegate our duties hereunder to any entity or person.

4. **CUSTOMERS.** You agree to respond promptly to all Customer complaints concerning the performance of the Products and to comply with and fulfill all your warranties, express or implied, relating to the Products and Services (and to permit any such warranties to be transferred to and be enforceable by the Customer during the term of the IPA).  You agree to perform all upgrades, maintenance and/or service covering the Products and Services as required under the Contract.

5. **ECOA.** Unless you have provided the applicant with a copy of our credit application, you agree that if an applicant for financing is declined by us and all other finance sources to whom you submit information for credit approval, you will timely provide such applicant with the notice relating to the applicant's rights and other information required under the Federal Equal Credit Opportunity Act.

6. **PROMISES.** You promise us whenever an invoice for Products and Services, as applicable, is submitted for funding that: (i) As of the date of any Schedules, neither you nor the Customer is in default under the Contract; (ii) All invoices you submit to us are true and correct and accurately reflect the market price for the Products and Services; (iii) You have fully informed us of all material information known to you concerning the applicant, the prospective IPA, and the Products and Services; (iv) No material misrepresentations have been made by you to the Customer or to us; (v) You have not provided the Customer with any part of the advance IPA payment; (vi) The Products and Services are solely for a business or commercial purpose, and will not be used for personal, family or household purposes; (vii) The Products shall perform as warranted under the Contract and you will timely perform all of your Service obligations under the Contract and the Customer's obligations under the IPA are not and will not become subject to any valid and enforceable right of set-off, counterclaim or deduction directly related to any acts or omissions by you; (viii) You are authorized to sell, license and/or sub-license the Products and perform the Services, and upon payment by us to you of the price for the Products and Services under section 2. above, you will transfer any applicable license and/or sublicense to the Customer; (ix) except as agreed to in Section 9 below, the Products have either been delivered to and unconditionally accepted by the Customer or the Customer has irrevocably directed us to pay you or a third party provider for the Products and / or Services, and the Services have been agreed to in writing by the Customer; (x) You agree that you will not (a) accept (other than advances or security deposits) or make any IPA payments by or on behalf of a Customer; (b) consent to the return or surrender of Products or cancellation of the Services by a Customer without our prior written consent; (c) adjust the pricing of the Products or Services or refund / credit back to the Customer any portion of the money we paid to you under this Agreement; (xi) **Should any subsequent change to the Contract result in a diminution of Products or Services you agree that any resulting credit or refund shall be paid directly to lender and not to the Customer;** and (xii) The term of the proposed IPA does not exceed 60 months.

Microsoft Finance is a trade name of the Microsoft group of companies and is used by PNCEF, LLC under license.

Exhibit 1

**EXHIBIT____/____** 

*13*

7. **CUSTOMER DEFAULT.** In the event a Customer defaults on a Contract and you do not fulfill all or any portion of the Services, you shall reimburse us upon demand for all such unperformed Services funded in advance, on a pro rata basis from the date of default or the date you ceased to provide such Services, along with any costs incurred in connection therewith. In the event a Customer is in default of its IPA , you agree, upon written request from us,, and to the extent you are legally permitted, to terminate such Customer's license or sublicense for any software included in the Products and to cease providing services financed under the IPA.

8. **ADVANCE FUNDING.** From time to time you may request that we fund to you all or a portion of the Product Cost and/or Services to be financed by us pursuant to a Schedule in advance of the delivery of the Product to the Customer or the performance of the Services or our receipt from you and the Customer of all of the items that would otherwise be required by us prior to funding. If we, in our sole discretion, agree to advance fund any such amount ("Advance Funded Amount"), any such funding shall be done pursuant to the terms of this Advance Funding section the terms of which you unconditionally agree to. In the event that a Customer defaults under an IPA and such default is due or related to your failure to provide any or all of the Products or Services (or your non-compliance under the Contract) you will promptly pay us, upon our request, the Advance Funded Amount less the principal portion of any payments we receive from the Customer under the Schedule. You hereby also grant us the right to directly set-off, or cause to be set-off, any and all amounts due or that become due under this section  against (x) any amounts we may owe to you for any reason, or (y) any amounts due to you and collected by us on your behalf. Our rights and remedies under this section shall not be exclusive, and you agree that we may exercise any other right or remedy available to us at law or in equity. All defined terms used in this Advance Funding section but not defined herein will have the meaning given them in the applicable IPA.

9. **REMEDIES.** If you breach any of your promises, warranties or obligations contained in this Agreement and as a result of your breach, the Customer is entitled to withhold payments to us under the IPA, you agree upon our request, to purchase the applicable IPA from us at our net book value, (as determined by us in accordance with generally accepted accounting principles), plus any applicable taxes.  We will then assign to you, without recourse, our interest in that IPA and transfer to you "AS-IS", "WHERE-IS" any interest we have in the related Products and the payment for the Services.  You also agree that we may exercise any other right or remedy available to us at law or in equity.  Upon the occurrence of any misrepresentation or breach by your company under this Agreement, we may elect to rescind any pending IPA credit approvals (whether given to you or to a Customer, and whether given orally or in writing).

10. **TERM.** This Agreement may be terminated by either you or us upon 30 days' written notice or immediately by the non-breaching party after breach of this Agreement by the other party.  Upon termination of this Agreement, each party's rights and obligations will remain in effect for all IPAs entered into before the date of termination.

11. **INDEMNIFICATION.**  You will indemnify and hold us and MSF and our and their respective affiliates and employees harmless from and against any and all claims, losses, suits, actions, damages, and costs and expenses arising out of or related in any way to any Products, this Agreement, or the Financing Program except if directly due to our gross negligence or willful misconduct.

12. **MISCELLANEOUS.**  (i) YOU AGREE THAT THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF OHIO AND YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN OHIO (ii) YOU AND WE EXPRESSLY WAIVE ANY RIGHTS TO A TRIAL BY JURY.  (iii) In the event of a dispute arising out of this Agreement the prevailing party shall be entitled to its reasonable attorney fees and other costs incurred in enforcing or defending this Agreement, (iv) you agree that the terms and conditions contained in this Agreement make up the entire agreement between you and us regarding the financing of the Products.  Any change in any of the terms and conditions of this Agreement must be in writing and signed by us, (v) if we delay or fail to enforce any of our rights under any Schedule or this Master Agreement, we will still be able to enforce those rights at a later time, (vi) all notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U.S. Mail, addressed to the party receiving the notice at its address shown on the front of each Schedule (or to any other address specified by that party in writing) with postage prepaid, (vii) all of our rights and indemnities will survive the termination of this Agreement.

---

VENDOR: BPMB, Inc.

Signature: _Michael mai_

Name/Title: Michael Mai, President

Print Name: Michael Mai

Date Signed: 06/14/2010

PNCEF, LLC, dba PNC Equipment Finance

Signature: _____

Name/Title: VP Operations

Print Name: dolly garrett

Date Signed: 6·15·10

Microsoft Finance is a trade name of the Microsoft group of companies and is used by PNCEF, LLC under license.

Exhibit 1

14

**Microsoft Financing**



**PNC**
EQUIPMENT FINANCE

## CERTIFICATION OF SECRETARY

The undersigned, hereby certifies to PNCEF, LLC, dba PNC Equipment Finance ("Payee"), its successors and assigns, that the person executing the foregoing Financing Program Agreement (the "Agreement") has full right, capacity and power and is duly authorized by all requisite internal action to execute, deliver and bind the maker thereof, and that the signature appearing on the Agreement is in fact the signature of the person so authorized.

Dated this _____14_____ date of June_____, 2010___.

Customer: **BPMB, Inc.**

_____
Secretary or Assistant Secretary

Microsoft Finance is a trade name of the Microsoft group of companies and is used by PNCEF, LLC under license.                    Exhibit 1

/5



# Microsoft Financing  PNC EQUIPMENT FINANCE

PNC Partner ID 30873
Microsoft Partner ID 2951817

## FINANCING PROGRAM AGREEMENT ("AGREEMENT")

This Financing Program Agreement is made this 14th day of June, 2010, by and between BPMB, Inc., with an address of 19621 Dearborne Circle, Huntington Beach, California 92648 ("you", "your", "your company") and PNCEF, LLC, dba PNC Equipment Finance ("we", "us", "our"). The purpose of this Agreement is to set forth the terms and conditions under which we may from time to time finance amounts payable by your customers to you and/or your supplier for your customers' acquisition and/or use of computer hardware and/or software, and/or services related thereto in relation to the Microsoft Financing Corporation Financing Program ("Financing Program").

1. **CREDIT APPROVALS.** From time to time you will obtain all necessary information for and submit applications to us for credit approval regarding financing of various Microsoft Corporation ("Microsoft") products and/or other third party computer hardware and software products distributed by you (collectively, "Products") and various services related thereto to be performed by you ("Services") under a written agreement between you and the Customer ("Contract"). We will use our reasonable efforts to determine the creditworthiness of an applicant within a commercially reasonable time after our receipt of the credit information we have requested. Notice of the approval or rejection of an applicant will be promptly conveyed to your company. All credit approvals will be valid for 90 days, provided that we may cancel the approval if there is a material adverse change in the financial condition of an approved applicant ("Customer") prior to our paying you for the Products as determined by us, acting as a commercially reasonable lender. We or Microsoft Financing Corporation ("MSF") will supply you with our financing rate factors to be used in the pricing of our IPAs, which factors are subject to change by us upon notice to you. **You agree not to submit any applications for an IPA with a term exceeding 60 months.** For the purposes of this Agreement, any reference to a "IPA" means collectively, our standard form of Installment Payment Agreement or Master Installment Payment Agreement and Schedules or other financing agreements. You may also obtain executed IPAs and related documents from Customers. You will immediately deliver all such executed IPAs and related documents directly to us.

2. **FUNDING.** We will pay you, or the third party provider, as applicable, for the Products and Services covered by an IPA within 2 business days after we receive: (a) an original IPA signed by the Customer; (b) the advance payment called for in the IPA if any; (c) an itemized original invoice from your company to us for the aggregate price of the Products and Services charged to the Customer; (d) confirmation from the Customer that the Products have been delivered and/or accepted or the Customer has unconditionally directed us to pay you or the third party provider for the Products and Services (except as provided under section 9, to include a properly completed Acceptance and Pay Proceeds Certificate); and (e) all other documentation or information we reasonably require. You agree to bear the risk of any loss or damage to the Products until it has been delivered and accepted by the Customer. You will determine if taxes are due under the Contract and you will add the taxes to the Products and Services and you will timely pay such taxes to the appropriate taxing authority(ies). For the portion of the Products that are provided through Microsoft, and for which you owe Microsoft, you agree that we may split fund the IPA by paying Microsoft directly for that portion of the amount financed under the IPA that are related to Microsoft provided Products and the balance of the amount financed under the IPA will be paid to you or the third party provider as applicable. We will provide you with confirmation of any payment made directly to Microsoft upon request.

3. **ASSIGNMENT.** You and we are not agents of each other and cannot act as such as you and we are separate legal entities and no partnership or joint venture is formed or implied under this Agreement. You may not assign your rights or delegate your duties hereunder. We may, without any consent or notice, assign any or all of our rights and/or delegate our duties hereunder to any entity or person.

4. **CUSTOMERS.** You agree to respond promptly to all Customer complaints concerning the performance of the Products and to comply with and fulfill all your warranties, express or implied, relating to the Products and Services (and to permit any such warranties to be transferred to and be enforceable by the Customer during the term of the IPA). You agree to perform all upgrades, maintenance and/or service covering the Products and Services as required under the Contract.

5. **ECOA.** Unless you have provided the applicant with a copy of our credit application, you agree that if an applicant for financing is declined by us and all other finance sources to whom you submit information for credit approval, you will timely provide such applicant with the notice relating to the applicant's rights and other information required under the Federal Equal Credit Opportunity Act.

6. **PROMISES.** You promise us whenever an invoice for Products and Services, as applicable, is submitted for funding that: (i) As of the date of any Schedules, neither you nor the Customer are in default under the Contract; (ii) All invoices you submit to us are true and correct and accurately reflect the market price for the Products and Services; (iii) You have fully informed us of all material information known to you concerning the applicant, the prospective IPA, and the Products and Services; (iv) No material misrepresentations have been made by you to the Customer or to us; (v) You have not provided the Customer with any part of the advance IPA payment; (vi) The Products and Services are solely for a business or commercial purpose, and will not be used for personal, family or household purposes; (vii) The Products shall perform as warranted under the Contract and you will timely perform all of your Service obligations under the Contract and the Customer's obligations under the IPA are and will not become subject to any valid and enforceable right of set-off, counterclaim or deduction directly related to any acts or omissions by you; (viii) You are authorized to sell, license and/or sub-license the Products and perform the Services, and upon payment by us to you of the price for the Products and Services under section 2. above, you will transfer any applicable license and/or sublicense to the Customer; (ix) except as agreed to in Section 9 below, the Products have either been delivered to and unconditionally accepted by the Customer or the Customer has irrevocably directed us to pay you or a third party provider for the Products and / or Services, and the Services have been agreed to in writing by the Customer; (x) You agree that you will not (a) accept (other than advances or security deposits) or make any IPA payments by or on behalf of a Customer; (b) consent to the return or surrender of Products or cancellation of the Services by a Customer without our prior written consent; (c) adjust the pricing of the Products or Services or refund / credit back to the Customer any portion of the money we paid to you under this Agreement; **(xi) Should any subsequent change to the Contract result in a diminution of Products or Services you agree that any resulting credit or refund shall be paid directly to lender and not to the Customer;** and (xii) The term of the proposed IPA does not exceed 60 months.

7.  **CUSTOMER DEFAULT.** In the event a Customer defaults on a Contract and you do not fulfill all or any portion of the Services, you shall reimburse us upon demand for all such unperformed Services funded in advance, on a pro rata basis from the date of default or the date you ceased to provide such Services, along with any costs incurred in connection therewith. In the event a Customer is in default of its IPA , you agree, upon written request from us, and to the extent you are legally permitted, to terminate such Customer's license or sublicense for any software included in the Products and to cease providing services financed under the IPA.

8.  **ADVANCE FUNDING.** From time to time you may request that we fund to you all or a portion of the Product Cost and/or Services to be financed by us pursuant to a Schedule in advance of the delivery of the Product to the Customer or the performance of the Services or our receipt from you and the Customer of all of the items that would otherwise be required by us prior to funding. If we, in our sole discretion, agree to advance fund any such amount ("Advance Funded Amount"), any such funding shall be done pursuant to the terms of this Advance Funding section the terms of which you unconditionally agree to. In the event that a Customer defaults under an IPA and such default is due or related to your failure to provide any or all of the Products or Services (or your non-compliance under the Contract) you will promptly pay us, upon our request, the Advance Funded Amount less the principal portion of any payments we receive from the Customer under the Schedule. You hereby also grant us the right to directly set-off, or cause to be set-off, any and all amounts due or that become due under this section  against (x) any amounts we may owe to you for any reason, or (y) any amounts due to you and collected by us on your behalf. Our rights and remedies under this section shall not be exclusive, and you agree that we may exercise any other right or remedy available to us at law or in equity. All defined terms used in this Advance Funding section but not defined herein will have the meaning given them in the applicable IPA.

9.  **REMEDIES.** If you breach any of your promises, warranties or obligations contained in this Agreement and as a result of your breach, the Customer is entitled to withhold payments to us under the IPA, you agree upon our request, to purchase the applicable IPA from us at our net book value, (as determined by us in accordance with generally accepted accounting principles), plus any applicable taxes.  We will then assign to you, without recourse, our interest in that IPA and transfer to you "AS-IS", "WHERE-IS" any interest we have in the related Products and the payment for the Services.  You also agree that we may exercise any other right or remedy available to us at law or in equity.  Upon the occurrence of any misrepresentation or breach by your company under this Agreement, we may elect to rescind any pending IPA credit approvals (whether given to you or to a Customer, and whether given orally or in writing).

10. **TERM.** This Agreement may be terminated by either you or us upon 30 days' written notice or immediately by the non-breaching party after breach of this Agreement by the other party.  Upon termination of this Agreement, each party's rights and obligations will remain in effect for all IPAs entered into before the date of termination.

11. **INDEMNIFICATION.** You will indemnify and hold us and MSF and our and their respective affiliates and employees harmless from and against any and all claims, losses, suits, actions, damages, and costs and expenses arising out of or related in any way to any Products, this Agreement, or the Financing Program except if directly due to our gross negligence or willful misconduct.

12. **MISCELLANEOUS.** (i) YOU AGREE THAT THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF OHIO AND YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN OHIO (ii) YOU AND WE EXPRESSLY WAIVE ANY RIGHTS TO A TRIAL BY JURY.  (iii) In the event of a dispute arising out of this Agreement the prevailing party shall be entitled to its reasonable attorney fees and other costs incurred in enforcing or defending this Agreement, (iv) you agree that the terms and conditions contained in this Agreement make up the entire agreement between you and us regarding the financing of the Products.  Any change in any of the terms and conditions of this Agreement must be in writing and signed by us, (v) if we delay or fail to enforce any of our rights under any Schedule or this Master Agreement, we will still be able to enforce those rights at a later time,  (vi) all notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U.S. Mail, addressed to the party receiving the notice at its address shown on the front of each Schedule (or to any other address specified by that party in writing) with postage prepaid, (vii) all of our rights and indemnities will survive the termination of this Agreement.

VENDOR: BPMB, Inc.

Signature: _Michael mai_

Name/Title: Michael Mai, President

Print Name: Michael Mai

Date Signed: 06/14/2010

PNCEF, LLC, dba PNC Equipment Finance

Signature: _____

Name/Title: VP, Operations

Print Name: dolly garrett

Date Signed: 6.15.10

# Microsoft Financing



**PNC**
EQUIPMENT FINANCE

## CERTIFICATION OF SECRETARY

The undersigned, hereby certifies to PNCEF, LLC, dba PNC Equipment Finance ("Payee"), its successors and assigns, that the person executing the foregoing Financing Program Agreement (the "Agreement") has full right, capacity and power and is duly authorized by all requisite internal action to execute, deliver and bind the maker thereof, and that the signature appearing on the Agreement is in fact the signature of the person so authorized.

Dated this _____14_____ date of June_____, 2010___.

Customer: **BPMB, Inc.**

_____
Secretary or Assistant Secretary

Customer Application
•••••••••••••••••••••••••••••••••••••••••                     •••••••••••••••••••••••••

Partner Information
MS Partner ID
MS Partner Zipcode
Partner Business Name:
Partner's Sales Person Name:                  Bpmb                                                                                      2935817
Partner's Sales Person Email                  Michael Mai                                                                               929486649
Partner's Sales Person Phone                  mmai@bpmbino.com
Partner Doing Business As Name                714-878-5015
Partner Primary Contact:
                                              MICHAEL MAI
Partner Business Address
                                              19631 Dearborne Cv
                                              Huntington Beach, CA 92648

Partner's Main Contact Fax Number
Partner's Main Contact Email                  mmai@bpmbino.com
Partner's Main Contact Phone Number           714-878-5015

Partner Type                                  Registered

Partner Application Status                    Approved
••••••••••••••••••••••••••••••••••••••••                     •••••••••••••••••••••••••
Customer Information
Customer Business Name'                       JAC Instruments Co
Customer DBA Name:
Business Type                                 Corporation
Are two years of published financial reports available?:      Yes
Customer's Notification Email                 dean@bpmbino.com
Customer Contact Full Name:                   Mike Zeman

Customer Address
                                              836 S First Street
                                              Vernon, CA 90058

Customer Fax Number
Customer Contact Email:                       mzeman@jachealthcare.com
Customer Contact Phone Number:                619-921-5436
Comments:                                     Customer is a medical and healthcare company looking to upgrade CRM/ERP systems inclusing deploying Mobile Clinical Assistant Tablet PC with Windows 7 Pro
•••••••••••••••••••••••••••••••••••••••                     •••••••••••••••••••••••••
Application Details
Loan Type                                     Loan
Customer Segment                              SMSP Breadth
Sales District                                USA - SoCal
Sales Region                                  USA - West
Is this a Pre-Screen application?             No
Microsoft Products (Select as that apply):    Microsoft Open License
Number of Software Licenses                    28 - 280
Microsoft License Only Software'
Microsoft EA or Select with Software Assurance Total
First Year                                     $                                                                                        $788,666.00
Second Year                                    $                                                                                        10
Third Year                                     $
Microsoft Enterprise Agreement True Up.        $
Microsoft Consulting Services and Support      $
Third Party Software:                          $
Hardware:
Partner Consulting and Implementation Service Fees.                                                                                     $598,349.00
Total Estimated Solution Price.                                                                                                         $40,000
Term                                           36 Month                                                                                 $633,105.00
•••••••••••••••••••••••••••••••••••••••                     •••••••••••••••••••••••••
Promotional Information
Choose a promotion.                           No promotion selected
•••••••••••••••••••••••••••••••••••••••                     •••••••••••••••••••••••••
Customer Notification:                        Approved
Affirmation                                   Affirmed

Exhibit 2 - Page 12

Partner Application

MS Partner ID:
Partner Business Name:                            2951817
Partner Doing Business As Name:      Bpmb, Inc.
Partner Primary Contact:
Partner Business Address:                MICHAELMAI

                                         19621 Dearborne Cir
                                         Huntington Beach, CA92648

Partner's Main Contact Fax Number:
Partner's Main Contact Email:            mmai@bpmbInc.com
Partner's Main Contact Phone Number:     714-878-5015
Partner Type:                            Registered

Exhibit 2 - Page 13

Customer Ordering Quote

**Microsoft Partner Name:** BPMB INC
Address: 19621 DEARBORNE CIR
City: HUNTINGTON BEACH
State/Province: CA
Postal Code: 92648-6648
Country: USA

**Finance To Contact:** Michael Mai
Phone: 714.876.5015
Email Address: mmai@bpmbinc.com
Fax Number: 714.625.8503

**Ship to Name:** JAC Instruments Co
Address: 4550 South Maywood Ave
City: Los Angeles
State/Province: CA
Postal Code: 90058
Country: USA

**Account Manager:** Dean Tran
Phone: 909.203.9340
Email Address: dean@bpmbinc.com

**End User Name:** JAC Instruments Co
Address: 5211 WASHINGTON BL, SUITE 2-174
City: Los Angeles
State/Province: CA
Postal Code: 90040-3963
Country: USA
**Customer Credit Information**
State of Incorporation: California
Corporation Type: Domestic Corporation
EIN: 95-3353113
DUNS: 37031580

**End User Technical Contact:** Mike Zeman
**End User Contact:** Henry Shibata
Phone: (323) 523-5022
**End User Technical Contact Email Address:**
**End User Contact Email Address:** hshibata@jacinstrument.com

| MICROSOFT FINANCE C O N T R A C T  I N F O R M A T I O N | |
|---|---|
| Partner Agreement: OrganizationID: 2951817 | Effective Date: 5/31/2011 |
| Addendum to Partner Agreement (If applicable to this order): _____ | Effective Date: |
| This ordering document incorporates by reference the terms of the partner agreement and addendum specified above ("agreement")  For purposes of this ordering document, "you" refers to the partner. | |
| End User License Agreement: _____ | Date or Version: |
| ☑ By selecting the checkbox, you are confirming that the end user is requesting Financing options for this order | |
| Validation Source: _Financial Statements_      (e.g. Annual Report, 10-K, end user written certification, etc.) | |